UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KAL ROSS, *et al.*,

    Plaintiffs,

        v.                        Civil Action No. 14-1360 (JEB)

VERNON DAVIS, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Although Defendant Vernon Davis has forged a successful career as an all-pro tight end for the San Francisco 49ers, he has not been able to elude the grasp of Plaintiffs Kal Ross and his eponymous sports agency. Plaintiffs filed the instant Complaint in the Superior Court of the District of Columbia on July 15, 2014, alleging breach of contract by Davis and his financial advisor, co-Defendant Amadou Tall. Ross asserts that he and Davis entered into an agreement pursuant to which Ross, for a 15% cut, would have the exclusive right to negotiate an advertising and promotion deal between Davis and Jamba Juice, a popular restaurant retailer. Ross claims that after he negotiated a preliminary arrangement with Jamba Juice, Tall stepped in and usurped the deal, depriving Ross of his percentage. Plaintiffs seek to recover compensatory and punitive damages in an amount in excess of $250,000. Noting the amount in controversy and the complete diversity of citizenship among the parties, Davis removed the case to this court pursuant to 28 U.S.C. § 1332.

This is not the first time Plaintiffs have brought these claims against these Defendants. On the contrary, they filed a substantively identical suit in the Northern District of California in March 2013. Only after several months of litigation, and after Defendants filed two dispositive motions, did

Plaintiffs voluntarily dismiss the action and re-file it in the District of Columbia. Noting the costs that such maneuvers impose, as well as the contradictions apparent on the face of Plaintiffs' various pleadings, Defendant Davis now seeks transfer of this case to the Northern District of California. As the Court agrees that such transfer is in the interest of justice, it will grant his Motion.

**I.     Background**

The following factual account is derived, in the main, from the Complaint that Plaintiffs Ross and his agency filed in the Superior Court of the District of Columbia, which now, post-removal, serves as the basis for this suit. Where relevant, certain filings from Plaintiffs' prior lawsuit in the Northern District of California are also cited.

Plaintiff The Kal Ross Agency is a limited liability company organized under the laws of the District of Columbia that characterizes itself as an "Agent and Manager for Artists, Athletes, Entertainers, and Other Public Figures." D.C. Compl., ¶ 2. Plaintiff Ross, a resident of the District of Columbia, is the Agency's sole member. See id., ¶ 3. Defendant Davis plays football for the San Francisco 49ers, a National Football League franchise. See id., ¶ 4. Defendant Tall, an employee of Invictus Executive Management Services, LLC, is Davis's current financial advisor. See id., ¶ 5. Both are residents of California. See id., ¶¶ 4, 5.

According to Plaintiffs, Ross and Davis conversed on numerous occasions in October 2011 via both telephone and e-mail. See id., ¶ 6. Those conversations eventually resulted in Ross's "offering his services in negotiating advertising and promotion deals for Davis, particularly with the Jamba Juice Company," a restaurant chain incorporated and headquartered in California. See id. Plaintiffs claim that, with Davis's knowledge, Ross entered into "a 50/50

partnership" with a "Marketing Agent," Andrew Stroth, for the "sole purpose of identifying, vetting and negotiating advertising and promotion deals for Davis." Id., ¶¶ 7, 10.

Ross and Stroth proceeded to make contact with Jamba Juice via its representative in the District of Columbia, Jarvis Stewart. See id., ¶ 11. "After multiple discussions and negotiation[s] in Washington, D.C.[,] between . . . Ross, Stroth, and Stewart, . . . Ross and Stroth informed Davis that an advertising and promotion deal for him with Jamba Juice looked promising." Id. As a result, on February 6, 2012, Ross "executed an agreement between himself and Davis to provide Ross the exclusive right to negotiate a business deal with Davis and Jamba Juice." Id., ¶ 14; Exh. 1 (Contract between Ross and Davis). As consideration for his services, Ross would cull 15% "of any and all compensation received by Davis as a result of the deal." Id.

Over the next several months, Ross and Stroth, acting pursuant to the purported contract, "continued and intensified" their negotiations with Stewart in the District. Id., ¶ 17. Those negotiations "culminat[ed]" in their arrangement of face-to-face meetings among Davis, the CEO of Jamba Juice, and the Vice President of Jamba Juice. See id., ¶ 20. Defendant Tall was also present at those meetings. See id.

Plaintiffs claim that shortly after these meetings, Tall orchestrated Ross's removal from the role of "exclusive negotiator[] of the marketing and promotion deal with Jamba Juice" and further instructed Jamba Juice to "cease all contact" with Ross and Stroth. See id., ¶ 23. Several months after that termination, Plaintiffs became aware – from a Jamba Juice press release – that Davis had independently entered into an advertising and promotion agreement with Jamba Juice. See id., ¶ 25.

Motivated by the belief that Defendants had capitalized on Ross's earlier efforts while robbing him of the profits, Plaintiffs sought compensation from Davis for the services rendered

in connection with the Jamba Juice deal. See id., ¶ 26. When Davis refused, Plaintiffs filed suit in the Northern District of California, alleging breach of contract, tortious interference with contract, and breach of the covenant of good faith and fair dealing. See Ross v. Davis, No. 13-1380 (N.D. Cal.), ECF No. 1 (Initial California Complaint). On August 6, 2013, responding to a motion to dismiss, the court there dismissed Plaintiffs' complaint as barred under California law, but granted leave to amend. See id., ECF No. 23. Taking the court up on its offer, Plaintiffs filed an amended complaint on August 20, 2013. See id., ECF No. 26 (Amended California Complaint). Defendants again moved to dismiss, arguing that California law still barred Plaintiffs' claims. See id., ECF No. 27. On September 23, 2013, before the court had an opportunity to rule on this second motion, Plaintiffs voluntarily dismissed the suit pursuant to Federal Rule of Civil Procedure 41(a)(1). See id., ECF No. 29. The game, however, was far from over.

Approximately ten months later, on July 15, 2014, Plaintiffs Ross and his agency filed a nearly identical complaint in the Superior Court of the District of Columbia. Defendant Davis removed the action to this Court, asserting diversity of citizenship as the basis for removal. See Ross v. Davis, No. 14-1360 (D.D.C.), ECF No. 1.[1] He now moves to dismiss under Rule 12(b)(6) for failure to state a claim. In so doing, he argues that this Court should apply California law to the alleged transaction between Plaintiffs and Davis, and that Ross's failure to register as an athlete agent in California in accordance with that state's law, see Miller-Ayala Athlete Agents Act, Cal. B. & P. Code §§ 18895-97 (West Supp. 1997), expressly prohibits Plaintiffs' recovery in this action. In the alternative, Davis asserts that this Court should transfer the suit back to the Northern District of California. Because the Court agrees that a venue

---

[1] It appears that Plaintiffs have yet to serve process on Defendant Tall. See MTD at 2.

transfer is appropriate, it need not delve into the choice-of-law quagmire presented by Defendant's first contention.

## II. Legal Standard

When a plaintiff brings suit in an improper venue, the district court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Motions for improper venue are governed by Federal Rule of Civil Procedure 12(b)(3). Although Defendant failed to cite this specific rule, his request for transfer of venue is crystal clear, see Opp. at 1, 7, 11, and the Court will not penalize him for his omission.

In considering a motion for improper venue, the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." Pendleton v. Mukasey, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (citing Darby v. U.S. Dep't of Energy, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)). The Court need not, however, accept the plaintiff's legal conclusions as true, see Darby, 231 F. Supp. 2d at 277, and may consider material outside of the pleadings. See Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947)).

"Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003); see also 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3826, at 258 (2d ed. 1986 & Supp. 2006). To prevail on a motion to dismiss for improper venue, however, "the defendant must present facts that will defeat the plaintiff's assertion of venue." Khalil v. L-3 Commc'ns Titan Grp., 656 F. Supp. 2d 134, 135

(D.D.C. 2009). Unless there are "pertinent factual disputes to resolve, a challenge to venue presents a pure question of law." Williams v. GEICO Corp., 2011 WL 2441306, at *2 (D.D.C. June 20, 2011).

Even if a plaintiff has brought his case in a proper venue, a district court may, "[f]or the convenience of parties and witnesses, in the interests of justice . . . transfer [it] . . . to any other district or division where [the case] might have been brought." 28 U.S.C. § 1404(a). District courts have "discretion . . . to adjudicate [such] motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). To warrant transfer under § 1404(a), the movant must show that "considerations of convenience and the interest of justice weigh in favor of transfer." Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003).

### III.  Analysis

Davis does not clarify whether his request to transfer this suit to the Northern District of California is premised on § 1406 or § 1404. As noted above, the former statute authorizes transfer of a case when the plaintiff's initially selected venue is improper, while the latter permits transfer even if the original forum is appropriate. The Court will analyze each section in turn, ultimately concluding that certain ambiguities in Plaintiffs' various pleadings make it difficult to determine whether or not the District of Columbia – their chosen forum – is a proper venue for their suit. As the Court believes that transfer to the Northern District of California is warranted regardless of whether venue is also appropriate here, it will rely on § 1404 rather than § 1406 in sending the case back to the Bay Area.

A. Section 1406

Under 28 U.S.C. § 1391(b), venue in a diversity case such as this one will generally lie either in a district where one of the defendants resides – if all defendants are residents of the same state – or where a substantial part of the events giving rise to the claim occurred. See 28 U.S.C. § 1391(b)(1)-(2). Here, because both Defendants live in California, see D.C. Compl., ¶¶ 4-5, the propriety of venue in the District of Columbia turns on whether Plaintiffs have established a sufficient connection between this forum and their suit. As a court in this district has noted,

> Nothing in section 1391(b)(2) mandates that a plaintiff bring suit in the district where the most substantial portion of the relevant events occurred, nor does it require a plaintiff to establish that every event that supports an element of a claim occurred in the district where venue is sought. To the contrary, a plaintiff need only show that "a substantial part of the events or omissions giving rise to the claim occurred" in that district. 28 U.S.C. § 1391(b)(2) (emphasis supplied).

Modaressi v. Vedadi, 441 F. Supp. 2d 51, 57 (D.D.C. 2006). The question of whether Plaintiffs have carried that burden is complicated by their ill-pled and inconsistent allegations.

In their Opposition, Plaintiffs assert that the contract between Ross and Davis was "negotiated, signed, and substantially performed" in the District. Opp. at 8. Had those factual allegations been adequately pled in Plaintiffs' Complaint – the operative document for purposes of establishing venue – the Court would take no issue with the District as a proper forum. Muddying the waters, however, is the fact that the Complaint does not actually specify exactly where the contract was negotiated or signed, and it is "axiomatic" that a plaintiff "may not amend [his] complaint through facts first alleged in an opposition brief." Miles v. Univ. of the District of Columbia, 2013 WL 5817657, at *9 n.4 (D.D.C. Oct. 30, 2013). The only events that Plaintiffs' Complaint specifically moors to the District – namely, some discussions between Ross

7

and Stewart, Jamba Juice's D.C. representative, see D.C. Compl., ¶¶ 11, 17 – relate to performance of the contract alone. The Court is uncertain whether such limited contacts with the District suffice to establish the propriety of venue here, particularly given that Plaintiffs readily admit that face-to-face meetings among Jamba Juice executives, Ross, and Davis, which took place in California, constituted the "culmination of their efforts" to perform the contract. Compl., ¶ 20; Opp. at 8.

Even if the Court were to read Plaintiffs' D.C. Complaint and Opposition in tandem, it cannot turn a blind eye to statements made by Plaintiffs in the prior proceedings in the Northern District of California. In both their initial and amended complaints there, Plaintiffs made the following allegations:

> 6. Venue in this district is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events on which the claim is based occurred in the Northern District of California.
>
> **INTRADISTRICT ASSIGNMENT**
>
> 7. This lawsuit should be assigned to the San Francisco/Oakland Division of this Court because the principal defendant resides in San Francisco County, California, <u>the contract alleged in this complaint was formed in San Francisco County, California</u> and <u>substantially all the conduct of the parties alleged in this complaint occurred in San Francisco County, California and Alameda County, California.</u>

Initial CA Compl., ¶¶ 6-7 (emphasis added); Amended CA Compl., ¶¶ 6-7 (emphasis added).

Plaintiffs urge the Court to disregard their prior pleadings and the statements contained therein. This it cannot do. As a general matter, courts "may take judicial notice of public records from other proceedings." Hemphill v. Kimberly-Clark Corp., 605 F. Supp. 2d 183, 186 (D.D.C. 2009) (citing Covad Comms. Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005)). Here, where Defendant asks the Court to note Plaintiffs' own pleadings from a prior

judicial proceeding centered on the same set of operative facts, the Court would be remiss to permit Plaintiffs to disavow their prior statements. See Jankovic v. Int'l Crisis Grp., 494 F.3d 1080, 1088 (D.C. Cir. 2007) ("[The plaintiff] opposes consideration of what he himself filed in [a separate action]. However, such materials may properly be considered on a motion to dismiss.").

At first glance, Plaintiffs' California pleadings appear to flatly contradict their representations in this court. Compare, e.g., Initial CA Compl., ¶ 7 (alleging that contract was "formed" in California) and Amended CA Compl., ¶ 7 (same), with Opp. at 8 (stating that contract was "negotiated" and "signed" in the District). Notwithstanding this facial tension, the Court recognizes that Plaintiffs' pleadings may be inartfully phrased yet still reflective of certain underlying truths. It is perhaps the case that the contract was negotiated and signed bi-coastally – that Ross negotiated with Davis and signed the contract from his place of residence, the District of Columbia, and that Davis negotiated with Ross and signed the contract from his place of residence, San Francisco. See D.C. Compl, ¶¶ 6, 13 (referring to negotiations via telephone and e-mail); id., ¶ 16 (stating that the contract was transmitted via e-mail). If this hypothesized series of events indeed reflects what actually occurred, then venue in the District of Columbia may well be proper.

In any event, the Court need not decide whether to rely on such guesswork here. Regardless of whether venue in the District is proper, the Court believes that transfer of this case to the Northern District of California pursuant to the Court's discretionary authority under § 1404 is warranted.

    B.  Section 1404

9

As an initial matter, to demonstrate eligibility for transfer under § 1404(a), a movant must show that the plaintiff could have originally brought the case in the transferee district. See Treppel v. Reason, 793 F. Supp. 2d 429, 435 (D.D.C. 2011). The movant must then demonstrate that "considerations of convenience and the interest of justice weigh in favor of transfer." Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003). This second inquiry "calls on the district court to weigh in the balance a number of case-specific factors," related to both the public and private interests at stake. Stewart Org., 487 U.S. at 29. The burden is on the moving party to establish that transfer is proper. See Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996).

Defendant handily satisfies § 1404(a)'s threshold requirement. Not only could this case have been brought in the Northern District of California, it was in fact previously filed and litigated there. In addition, both Defendants are from California, and Davis resides in San Francisco, making venue proper in the Northern District of California under 28 U.S.C. § 1391(b)(1). See id. ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."). And, of course, the Court notes Plaintiffs' own prior statements from their California pleadings asserting the propriety of venue in the Northern District under 28 U.S.C. § 1391(b)(2). To repeat, Plaintiffs alleged that "a substantial part of the events on which the claim is based occurred" there, that the disputed contract "was formed" there, and that "substantially all the conduct of the parties alleged in this complaint occurred in . . . California." Initial CA Compl., ¶¶ 6-7; Amended CA Compl., ¶¶ 6-7.

Having cleared this preliminary hurdle, the Court must next determine whether the interests of justice and convenience warrant transfer. In such a consideration, a court ordinarily

10

balances the following private-interest factors: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. See Trout Unlimited, 944 F. Supp. at 16. A court may also weigh public-interest considerations such as (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home. See id. Ultimately, however, "[t]he decision whether or not to transfer the case to another judicial district pursuant to 28 U.S.C. § 1404(a) is discretionary." In re DRC, Inc., 358 Fed. App'x 193, 194 (D.C. Cir. 2009). Therefore, "the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness." SEC v. Savoy Indust., 587 F.2d 1149, 1154 (D.C. Cir. 1978); see also Stewart, 487 U.S. at 29 (noting that courts "adjudicate motions for transfer according to an individual case-by-case consideration of convenience and fairness") (internal quotation marks omitted).

In this case, neither the private-interest nor public-interest factors tip the scales decisively in favor of either venue. Considering the first and second private-interest factors, Plaintiffs clearly prefer the District of Columbia, and Defendant Davis just as clearly desires the Northern District of California. Normally, where parties disagree, the plaintiff's chosen forum is entitled to deference. See Thayer/Patricof Educ. Funding, LLC v. Pryor Res., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (plaintiff's choice of forum is a "paramount consideration in any determination of a transfer request"). Here, however, where Plaintiffs originally filed the suit elsewhere, and Defendant seeks merely to return the case to that jurisdiction, the Court is less inclined to give deference to Plaintiffs' flavor-of-the-month preference.

Where Plaintiffs' claim arose – the third factor – is a matter of dispute. If, as the most generous reconciliation of the three complaints suggests, see *supra* Part III.A, some of the underlying developments giving rise to the instant dispute occurred in both the District and California, this factor does little to move the needle in either direction. See Bederson v. United States, 756 F. Supp. 2d 38, 48 (D.D.C. 2010) (where claim arises from actions in several fora, "this factor does not weigh in favor or against transfer"). The convenience of the parties likewise splits down the middle, and, assuming that relevant events occurred in both locales, so does the convenience of the witnesses and ease of access to sources of proof. See id.

Turning to the first public-interest consideration – the transferee's familiarity with the governing laws – the parties spill much ink on the question of whether D.C. or California law governs this suit. Although it is often the case that the interest of justice is "served by having a case decided by the federal court in the state whose laws govern the interests at stake," Trout Unlimited, 944 F. Supp. at 19, and thus the outcome of a choice-of-law analysis can potentially affect questions of venue, the present suit deals with basic principles of contract interpretation and the application of straightforward state law governing athlete agents. The Court is confident that either venue could readily and competently adjudicate this non-technical dispute, regardless of which state's law applies.

With regard to the relative congestion of the courts, the parties have not briefed this issue, but given that courts in both districts have now engaged with the issues presented by this dispute in a reasonably timely fashion, it appears that this factor does not favor either venue. Finally, the interest in having local controversies decided locally does little to tilt the balance here, where the controversy cannot be deemed purely "local" to either jurisdiction: California's interest in resolving its athletes' claims there is largely "neutralize[d]" by the District's analogous interest

in resolving its agents' claims here. See Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 34 (D.D.C. 2013).

Application of the conventional factors, then, might leave the Court in equipoise, or nearly so. But § 1404(a) inquiries are case specific, and this case arises in a highly unusual posture. The forum to which Defendant seeks transfer – the Northern District of California – is not foreign to Plaintiffs; on the contrary, they initially filed suit against Defendants in that district. That suit, which involved the same operative set of facts and issues, imposed considerable costs on Defendants and consumed significant judicial resources. Although Plaintiffs point out that they voluntarily dismissed their California suit, see Opp. at 3, they did so only after: (1) Defendants had filed a Rule 12(b)(6) motion in response to Plaintiffs' initial complaint; (2) the court had granted the motion and dismissed the case without prejudice; and (3) Defendants had filed a second Rule 12(b)(6) motion in response to Plaintiffs' subsequent amended complaint, again explaining that California law barred the suit. The underlying purpose of § 1404(a) is "to prevent the waste of time, energy[,] and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). That objective would be gravely undermined if Plaintiffs were permitted to voluntarily dismiss after extensive litigation in one forum simply to bring identical claims in a potentially more favorable locale.

The Court also notes that although the sundry assertions made by Plaintiffs regarding venue may be somewhat reconcilable – that is, their suit may have a substantial nexus to both the District of Columbia and the Northern District of California – the manner in which they phrased their venue allegations here remains misleading at best and disingenuous at worst. Under such circumstances, the Court believes it just to hold Plaintiffs to the representations in their first suit

establishing the propriety of venue in the Northern District of California and to return the suit to that district. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988) (the "interest of justice" encompasses the dual principles of "systemic integrity and fairness").

### IV.  Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order transferring the case to the Northern District of California.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 21, 2014